FILED

NOV 1 5 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**DAVID C. KANZ,**
**5200 S. TUCKAWAY BOULEVARD #226-B**
**GREENFIELD, WI 53221**

                  **Petitioner,**

**v.**

**STATE OF WISCONSIN,**
**a municipal corporation,**
**c/o Wisconsin Department of Justice**
**P.O. Box 7857**
**Madison, WI 53707-7857**
**(608)-266-1221**

or

**STATE OF WISCONSIN,**
**a federal corporation,**
**c/o Wisconsin Department of Justice**
**P.O. Box 7857**
**Madison, WI 53707-7857**
**(608)-266-1221**

or

**STATE OF WISCONSIN, INC.,**
**a federal municipal corporation,**
**c/o Wisconsin Department of Justice**
**P.O. Box 7857**
**Madison, WI 53707-7857**
**(608)-266-1221**

or

**WISCONSIN state,**
**c/o Wisconsin Department of Justice**
**P.O. Box 7857**
**Madison, WI 53707-7857**
**(608)-266-1221**

CASE NUMBER  1:02CV02263

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Pro se General Civil

DATE STAMP: 11/15/200_



**COMPLAINT FOR**
**PETITION FOR DECLARATORY**
**JUDGEMENT TO DECLARE**
**RIGHTS AND OTHER LEGAL**
**RELATIONS AND TO VACATE**
**THE VOID JUDGMENT OF**
**CONVICTION**

as the case may be,

and,

Dane County,
a municipal corporation,
c/o Corporation Counsel
City County Building
210 Martin Luther King Jr. Blvd.,
Room 419
Madison, WI 53703
(608)-266-4355,

Respondents.

## COMPLAINT FOR PETITION FOR DECLARATORY JUDGMENT TO DECLARE RIGHTS AND OTHER LEGAL RELATIONS AND TO VACATE THE VOID JUDGMENT OF CONVICTION

Now Comes David C. Kanz, in want of counsel, petitioner in the above styled action and as and for a **COMPLAINT FOR PETITION FOR DECLARATORY JUDGMENT TO DECLARE RIGHTS AND OTHER LEGAL RELATIONS AND TO VACATE THE VOID JUDGMENT OF CONVICTION**, and shows to the Court as follows:

1. That the undersigned, in want of counsel and a layman without law school training, hereby invokes the rights, and the indulgence of this Court, as enunciated by the Supreme Court of the United States in *Haines v. Kerner*, 404 U.S. 519 and Conley v. Gibson, 355 U.S. 41, 45 -46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944).

## JURISDICTION

2. Jurisdiction lies in this Court per the following:

> The Judicary Act of 1789, section 25.

> 28 U.S.C. §§2201, 2202.

> Article III of the Constitution of the United States.

> Article 6 of the Bill of Rights of the Constitution of the United States.

> IN RE TARBLE, 80 U.S. 397 (1871) (Wall.) (Writ of Error to the Supreme Court of Wisconsin; Dane County Court Commissioner)

## VENUE

3. That the venue of this Court is Article III of the Constitution of the United States exercising Article III powers whose Article III judge exercises Article III powers as distinguished from an Article III or Article I Court exercising Article I powers whose Article III or Article I judge exercises Article I powers.

4. That the undersigned would not object to a change of venue to the United States District Court-Eastern District of Wisconsin if such change of venue did not constitute a transfer to a court of inferior jurisdiction.

## PARTIES

5. That David C. Kanz is an adult resident of the State of Wisconsin currently in the custody of the State of Wisconsin pursuant to a judgment issued by the Dane County Circuit Court and enforced by the State of Wisconsin.

6. That the undersigned does not bring this suit seeking monetary damages or damages of any kind against the respondents, but only in order to address the issue of an arguably void judgment.

7. That Dane County and the State of Wisconsin are named as parties only as respondents in that they are the originators, beneficiaries and enforcers of the void judgment and have claim or interest in these proceedings.

## BACKGROUND

1. That on June 28, 1995, the undersigned, via registered mail, did send a presentment in the form of a Request for Admissions to Catherine M. Doyle, (citizen-informant in the Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, hereinafter "Doyle,") requesting that she admit or deny the admissions thereby presented to her.

2. That such request was sent as an informal discovery request.

3. That Doyle was requested to respond within ten (10) days or, as an operation of law, the matters contained in the admissions would be deemed to be admitted.

4. That on July 13, 21 and 27, 1995, public notice was published in the Milwaukee Journal Sentinel notifying Doyle and all the world, that if Doyle failed or refused to respond the said failure or refusal to respond would result in a default nihil dicit judgment.

5. That after 30 days, including publication, Doyle failed or refused to respond.

6. That per Wisconsin Court Rules and Procedure 804.11(1)(b) "…The matter is admitted unless, within 30 days after service of the request…"

7. That Doyle, to this day, has failed or refused to respond and deny her admissions.

4

8. That Doyle did not respond to the public notice as described above and thereupon the indebtedness admitted in the presentment was deemed to have attached as final nihil dicit judgment.

9. That on July 28, 1995, based on the admitted debt of Doyle, the undersigned, in order to perfect his interest in the admitted debt, filed with the Secretary of State of the State of Wisconsin a U.C.C. 1 Financing Statement with documents attached thereto demonstrating the evidence of the said debt.

10. On August 11, 1995, the undersigned filed with the Secretary of State a U.C.C. 4 Amendment Statement to correct an omission on the original filing.

11. That on August 28, 1995, the undersigned did file with the Secretary of State a final U.C.C. 4 Amendment Statement clarifying the manner in which the documents were filed, and appended with an accommodation signature.

12. That all of the writings affixed or attached to the said U.C.C. filings by the undersigned were attached with a specific reservation of rights under U.C.C. 1-207.

13. That such reservation of rights by the undersigned reduces the writings on the U.C.C. filings from signatures, with form and substance, to that of writings consisting of form with no substance are non-assumpsit's.

14. That on October 11, 1995 after at least 2 voluntary meetings with the undersigned, Eric J. Szatkowski (herein after "Szatkowski), an agent and employee of James E. Doyle, (then attorney general for the State of Wisconsin and brother of Catherine M. Doyle), at the Department of Justice of the State of Wisconsin, sent to the undersigned via registered mail, a purported Summons and Complaint charging the undersigned with violations of

Wisconsin Statutes 943.38 (2), Uttering a Forgery and 943.60, Criminal Slander of Title, in filing the above described U.C.C. filings.

15. That Szatkowski was named as the complainant and/or complaining witness on the purported summons and complaint, and Doyle as the citizen-informant.

16. That the undersigned appeared in want of counsel and objected to the court his need of counsel throughout the entirety of the pre-trial procedure and appeared as required on the required dates.

17. That the undersigned was arraigned on 12/07/95 at which time a plea was entered for the undersigned by Judge Daniel R. Moeser, Dane County Circuit Court, over the objection of the undersigned.

18. That no motion hearing was had in the above styled action for approximately one year notwithstanding motions were filed with the court as follows:

| | |
|---|---|
| 10/16/95 | NOTICE OF SPECIAL APPEARANCE |
| 10/16/95 | BILL QUIA TIMET |
| 11/21/95 | DEMAND FOR SPEEDY TRIAL |
| | BILL QUIA TIMET |
| | REQUEST TO TAKE JUDICIAL NOTICE |
| | MOTION TO STRIKE THE CRIMINAL COMPLAINT |
| 12/07/95 | BILL QUIA TIMET |
| 12/18/95 | REQUEST FOR PRODUCTION |
| | REQUEST FOR ADMISSIONS |
| 01/05/96 | BILL QUIA TIMET |
| | MOTION TO STRIKE THE PLEA |
| | MOTION TO DISMISS |
| | AFFIDAVIT OF PURGATION |
| | MOTION TO CONTINUE |
| 01/25/96 | MOTION TO DISMISS OR IN THE ALTERNATIVE TO PROHIBIT FURTHER PRODUCTION |
| 05/16/96 | MOTION TO COMPEL FIRTHER PRODUCTION |
| | PETITION FOR WRIT OF MANDAMUS |
| | MOTION TO CONTINUE |
| 08/02/96 | MOTION TO DISMISS BASED ON RES JUDICATA |
| 09/06/96 | REQUEST TO TAKE JUDICIAL NOTICE OF ADJUDICATED |

|          | FACTS AND LAW. |
|----------|----------------|
| 09/26/96 | MOTION FOR ORDER OF PRODUCTION OF DISCOVERY AND DEMAND FOR PRODUCTION OF DISCOVERY MATERIALS |
|          | MOTION FOR BILL OF PARTICULARS |
| 10/02/96 | BILL QUIA TIMET |
|          | MOTION TO INSPECT PHYSICAL EVIDENCE |
| 10/10/96 | AFFIDAVIT OF BIAS AND PREJUDICE |
|          | MOTION TO STRIKE THE COMPLAINT BASED ON EQUITABLE ESTOPPEL OR ESTOPPEL BY MISREPRESEN- TATION OR ESTOPPEL BY CONDUCT |
|          | MOTION TO DISMISS DUE TO PARENS PATRIAE |
|          | MOTION IN LIMINE |

19. That a motions hearing was then scheduled on October 10, 1996, three days prior to trial, during which every motion filed by the undersigned was denied by the trial court.

20. That over the objection of the undersigned, Jury selection took place on October 14, 1996 between the hours of 9:00 am and approximately 4:00 pm.

21. That there were several verbal and written motions brought by the undersigned during the jury selection and trial including but not limited to:

    MOTION TO DELIVER PATTERN JURY INSTRUCTIONS

    MOTION FOR JURY INSTRUCTION RE: GEORIGA V. BRAILSFORD AND THE RIGHTS AND POWER OF THE JURY

22. That a petition for removal of the action styled as State of Wisconsin v. David C. Kanz, Case No. 95-CF-2110, to federal court was filed on October 15, 1996 at 8:00 am and notice of such filing for removal was filed with the trial court at 8:30 am, prior to the convening of court and swearing in of the jury.

23. That, notwithstanding the notice of removal, court was convened at 07:45 am, trial was held on the 15th and 16th of October.

24. That the verdict of the jury was announced and entered by the court on October 16, 1996.

25. That the judge did not deliver the pattern jury instructions to the jury, rather, did deliver twenty-two (22) pages of jury instructions of his own construction.

26. That the judgment of conviction was verbally entered, upon motion of the District Attorney for Dane County, C. William Foust, against the undersigned on the same date. (Judgment of Conviction attached as Exhibit "A.")

27. That the undersigned was then taken into custody and imprisoned on October 16, 1996, and held until December 20, 1996, at which time he was sentenced to two (2) years prison time, and probation of ten (10) years concurrent to the prison time.

28. That an imposed and stayed sentence of five (5) years concurrent with the above probation period was also entered against the undersigned.

29. That concurrent to the above sentence, the court also imposed two 3-year probation periods and two 10-year probation periods.

30. That a timely Notice of Intent to Pursue Post-conviction Relief was filed and transcripts were ordered by the undersigned.

31. That transcripts were not provided to the undersigned until nearly six months after requested and a Motion for Post-conviction Relief was finally filed on October 23, 1997.

32. That the trial court conducted a hearing on 12/19/97 to determine the Post-conviction Motion but instead allowed the State another thirty (30) days to respond to the motion.

33. That the State sent to the Court a letter in lieu of a brief on 02/16/98.

34. That the defendant was scheduled for Mandatory Release on February 16, 1998.

35. That the Department of Community Corrections however, required of the undersigned the signing and filing of a prepared UCC-4 form to terminate "the lien" or encumbrance in question prior to his release.

36. That the undersigned did not initially comply with the demand to voluntarily terminate the lien as he believed that such action on his part would severely limit and eliminate some of the issues available on his appeal, which appeal is his right.

37. That the Wisconsin Department of Community Corrections informed the defendant that if he did not comply with the removal and voluntary termination of the lien in question, they would revoke his probation and he would face a maximum 32 years imprisonment when probation was revoked.

38. That the undersigned did not initially comply and on or about February 10, 1998, was placed in solitary confinement for seven days and then transported to Fox Lake Correctional Institute, a medium security facility, to await revocation.

39. That due to the mental and physical torture, in contemplating 32 years of incarceration while in solitary confinement, and coercion inflicted upon the defendant, he did then comply and signed the termination form (UCC-4 Form) which was then sent to Beth J. Kushner, attorney for Catherine M. Doyle, which, upon information and belief, Ms. Kushner filed with the Secretary of State for the State of Wisconsin.

40. That the undersigned was then released on parole on February 19, 1998.

41. That the trial court then entered a denial of the post-conviction motion of the undersigned on 05/28/98 only after an inquiry of the status of the case by the undersigned via telephone.

42. That Notice of Appeal in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz was filed on 06/16/98 and the case then reached the Court of Appeals for the State of Wisconsin.

43. That the Court of Appeals of the State of Wisconsin then dismissed the appeal of the undersigned allegedly for violating the briefing schedule of the appeal.

44. That this action was taken by the Court of Appeals despite the fact that motions were pending before the Court which tolled the time of the briefing schedule.

45. That the Supreme Court of the State of Wisconsin was presented with a Petition for Review of the case which they summarily dismissed without explanation.

46. That this action is brought now for redress of the obvious and egregious violation of the Constitutional rights of the undersigned by the State of Wisconsin and all named parties by their imposition of a void judgment of conviction.

47. That the undersigned was denied the assistance of counsel, over the objection of the undersigned, throughout the entirety of case No. 95-CF-2110, State of Wisconsin v. David C. Kanz.

## ALLEGATIONS

**I. THE TRIAL COURT IN CASE NO. 95-CF-2110, STATE OF WISCONSIN V. DAVID C. KANZ, DENIED THE UNDERSIGNED COUNSEL THROUGHOUT THE ENTIRETY OF THE PRE-TRIAL AND TRIAL PROCEEDINGS, AND PROCEEDED TO TRIAL AND CONVICTION AND INCARCERATED THE UNDERSIGNED IN VIOLATION OF THE SIXTH AMENDMENT RIGHTS OF THE UNDERSIGNED THUS RENDERING THE PURPORTED JUDGMENT OF CONVICTION IN THE SAID CASE VOID.**

1. That every pleading submitted by the undersigned in Case No. 95-CF-2110 was done so **in want of counsel.**

2. That at no time during the proceedings of Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, did the undersigned knowingly or intelligently waive his 6th Amendment right to counsel, as demonstrated by the record.

3.  That *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, states in pertinent part, to wit:

"...The Sixth Amendment guarantees that: 'In all criminal actions the accuses shall enjoy the right * * * to have the Assistance of Counsel for his defense.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' cf. Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288.

It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to a lawyer---to the untrained layman---may appear intricate, complex, and mysterious...

'...Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with a crime, he is incapable, generally, of determining for himself whether and indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' Powell v. Alabama, 287 U.S. 45, 68, 69, 53 S.Ct. 55, 63, 64, 77 L.Ed. 158, 84 A.L.R. 263. It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental rights Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 812, 81 L.Ed. 1177; Hodges v. Easton, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169, and that we 'do not presume acquiescence in the loss of fundamental rights.' Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093.

The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court in which the accused---whose life or liberty is at stake---is without counsel. This protecting duty imposed serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused..."

"Since the Sixth Amendment constitutionally entitles one charged with a crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a ....court's authority to deprive an accused of his life or liberty...If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. **A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court---as the Sixth Amendment requires---by providing counsel for an accused who is unable to obtain counsel, who**

has not intelligently waived this constitutional guaranty, and whose life and liberty is at stake. Cf. Frank v. Mangum, 237 U.S. 309, 327, 35 S.Ct. 582, 587, 59 L.Ed. 969. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by the court without jurisdiction is void, and the one imprisoned thereunder may obtain release by habeas corpus." (Emphasis added)

4.  That the Fourteenth Amendment of the Constitution of the United States makes the above Sixth Amendment right obligatory on the states. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792 (1963)

5.  That "presuming the waiver of counsel from a silent record is impermissible." *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 262.

6.  That the record in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, contains no intelligent and knowing waiver of the Sixth Amendment right of the undersigned, to the contrary, every page of pleadings submitted by the undersigned cry out "in want of counsel," and the undersigned in every pleading and at every available opportunity declared his inability to proceed in want of counsel.

7.  That as late as three days prior to trial the court inquired as to whether the undersigned thought the case should proceed to trial. (Index of Record to Court of Appeals, Document #104, pp. 53-54, attached as Exhibit "B.")

8.  That the undersigned reiterated explicitly that he was without counsel and should not proceed to trial until counsel could be obtained. (Exhibit "B," p. 54)

9.  That the court characterized such statements as a waiver of counsel. (Exhibit "B," p. 54, lines 15-20)

10. That the statement of the undersigned in the above exchange cannot in any way be construed as a knowing and intelligent waiver of his 6th Amendment right to counsel, but on the contrary, is an explicit reservation of that right.

11. That per *Johnson v. Zerbst, supra*, the lower court lost jurisdiction of the above styled action, therefore, there was no trial, no conviction, no judgment of conviction and no sentence imposed in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz.

12. That the actions taken against the undersigned after the violation of the 6th Amendment rights of the undersigned were done, without and void of jurisdiction and to the injury of the undersigned.

13. That such actions render the judgment of conviction purportedly obtained and entered against the undersigned a void judgment.

14. That such actions render the judgment of conviction, purportedly obtained by the Dane County Circuit Court in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, a nullity and subject to collateral attack. (*Kalb v. Feuerstein*, 308 U.S. 433, 291 N.W. 840.)

15. That a void judgment is a simulated judgment devoid of any potency because of its jurisdictional defects. (*Ward v. Terriere*, 386 P.2d 352)

16. That a void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind the parties or to support a right, of no legal force and effect whatever, and is incapable of enforcement in any manner or degree. (*Loyd v. Director, Dept. of Public Safety*, 480 So.2d 577; *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645; *Holstein v. City of Chicago*, 803 F.Supp. 205)

17. That a judgment is a void judgment if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. (*Klugh v. U.S.*, 620 F.Supp. 892)

18. That orders or "[j]udgments entered contrary to due process are void." *Neylan v. Vorwald*, 121 Wis.2d 481, 488, 360 N.W.2d 537, 540 (Ct. App. 1984)

19. A void judgment is a mere nullity, and any proceedings founded upon it are equally worthless. See *Fischbeck v. Mielenz*, 162 Wis. 12, 17, 154 N.W. 701, 703 (1916); *Neylan v. Vorwald*, 124 Wis.2d 85, 99, 368 N.W.2d 648, 656 (1985).

20. That a void judgment cannot create a right or obligation, as it is not binding on anyone. (See id.)

21. That the ruling of the Court in State v. Haste, 175 Wis.2d 1, 500 NW2d 678 (Wis.App. 1993), and the cases cited therein by this Court, even further proscribes the activity of the trial courts in this regard, to wit:

    "...the trial court must determine, first, that a defendant knowingly and voluntarily waives the right to counsel and, second, that a defendant is competent to proceed pro se."

    "Because the right to representation and right to be present throughout trial are constitutionally guaranteed and essential to due process, waiver, competency to proceed pro se, and continuing representation and presence throughout all critical stages of criminal court proceeding must be scrutinized with painstaking care."

    "Defendant was denied his due process right of representation where trial court failed to explicitly determine whether defendant waived counsel and was competent to proceed pro se, where his waiver of counsel was not affirmatively demonstrated explicitly or implicitly..."

22. That in Brown v. State, 24 Wis.2d 491, 129 NW2d 175 (1964), reh'g denied, 380 U.S. 959, 85 S.Ct. 1094, 13 L.Ed.2d 977 (1965), the court said that the Wisconsin Constitution, Article I, section 7, **requires** an inquiry into whether a defendant has the ability to intelligently evaluate his or her circumstances during the course of a prosecution. (emphasis added)

23. That no such inquiry was ever conducted by the trial court.

24. That the trial court itself, on July 30, 1997, characterized the pleadings of the undersigned throughout the entirety of the case No. 95-CF-2110 as inadequate in content, without legal merit, and that due to such inadequacies "there is little likelihood of success on appeal." (Index of Record to Court of Appeals, Document number 111, pp. 22-23, attached as Exhibit "C.")

25. That said statement by the trial court judge reveals a knowledge on the part of the trial court judge prior to trial that the undersigned was not adequate to proceed without benefit of counsel in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz.

26. That such assessment on the part of the trial court judge should have been ample cause and basis for providing the undersigned with the assistance of counsel.

27. That the failure or refusal to provide the mandated Constitutional right to the assistance of counsel as stated in the 6th Article of the Bill of Rights of the Constitution of the United States by the trial court deprives the trial court from obtaining a lawful judgment of conviction.

28. That the trial court apparently still believes that the effective assistance of counsel is not a mandatory right.

29. That, as a matter of fact, the Supreme Court of the State of Wisconsin overruled this same trial Court judge and reversed the very same lower court on the issue of the right to counsel in A.S. v. State, 163 Wis.2d 694, 485 NW2d 52.

30. That actual or constructive denial of assistance of counsel altogether is legally presumed to result in prejudice. (Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067).

24. That the trial court itself, on July 30, 1997, characterized the pleadings of the undersigned throughout the entirety of the above styled action as inadequate in content, without legal merit, and that due to such inadequacies "there is little likelihood of success on appeal." (Index of Record to Court of Appeals, Document number 111, pp. 22-23, attached as Exhibit "C.")

25. That said statement by the trial court judge reveals a knowledge on the part of the trial court judge prior to trial that the undersigned was not adequate to proceed without benefit of counsel in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz.

26. That such assessment on the part of the trial court judge should have been ample cause and basis for providing the undersigned with the assistance of counsel.

27. That the failure or refusal to provide the mandated Constitutional right to the assistance of counsel as stated in the 6th Article of the Bill of Rights of the Constitution of the United States by the trial court deprives the trial court from obtaining a lawful judgment of conviction.

28. That the trial court apparently still believes that the effective assistance of counsel is not a mandatory right.

29. That, as a matter of fact, the Supreme Court of the State of Wisconsin overruled this same trial Court judge and reversed the very same lower court on the issue of the right to counsel in *A.S. v. State*, 163 Wis.2d 694, 485 NW2d 52.

30. That actual or constructive denial of assistance of counsel altogether is legally presumed to result in prejudice. (Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067).

31. That such action by the trial court constitutes an abuse of discretion, is a violation of the

6th Amendment rights of the undersigned and renders the judgment of conviction void.

32. That at sentencing in Case No. 95-CF-2110, on December 20, 1996, Luis Cuevas, the

public defender provided to the undersigned by the State of Wisconsin for sentencing

only, stated, on the record that, to wit:

> "Many people go to trial based upon their beliefs or convictions, with or without a
> lawyer. Sometimes I guess you have advice of that lawyer. **Mr. Kanz did not
> have the benefit to have an attorney represent him**. Any information that he
> gathered…was based upon his own reading of the law, his understanding of the
> law." (Index of Record to Court of Appeals, Document #110, p. 45, attached as
> Exhibit "D.") (Emphasis added)

33. That said denial of counsel by the Dane County Circuit Court and Judge Moeser also

violates the ruling of the Supreme Court of the United States in the cases of *Alabama v.*

*Shelton*, No. 00-1214. Argued February 19, 2002--Decided May 20, 2002 and

*Argersinger v. Hamlin*, 407 U. S. 25 which state, to wit:

> "The controlling rule is that "absent a knowing and intelligent waiver, no person
> may be imprisoned for any offense ... unless he was represented by counsel at his
> trial." *Argersinger*, <u>407 U. S.. at 37</u>. Pp. 5-6." *Alabama v. Shelton.*


**II. THE COURSE OF ACTION WHICH WAS CHARGED AGAINST THE
UNDERSIGNED AS CRIMINAL ACTIVITY WAS, IN FACT, HIS EXERCISE OF A
COMMON LAW REMEDY, PRESERVED TO HIM UNDER THE TERMS AND
PROVISIONS OF THE JUDICIARY ACT OF 1789, THE CONSTITUTION OF THE
UNITED STATES, THE CONSTITUTION OF THE STATE OF WISCONSIN AND THE
UNIFORM COMMERCIAL CODE.**


1. That "the claim and exercise of a constitutional right cannot be converted into a crime."

*Miller v. U.S.*, 230 F 486, at 489.

2. That the undersigned asserts that the actions taken and relied upon by the undersigned

which have been characterized as criminal acts in Case No. 95-CF-2110, State of

Wisconsin v. Kanz, is a common law remedy, and that thereto the undersigned makes

offer of proof.

3.   That "common-law remedy" is defined and elaborated upon in Black's Law Dictionary as

follows:

"This phrase, within the meaning of U. S. Judicial Code 1911, section 256 (Act
March 3, 1911, c. 231, 36 Stat. 1100, see Historical and Revision Notes under 28
U.S.C.A. section 1333), was not limited to remedies in the common-law courts, but
embraced all methods of enforcing rights and redressing injuries known to the common
or statutory law. Kennerson v. Thames Towboat Co., 89 Conn. 367, 94 A. 372, 375,
L.R.A. 1916A, 436. See, also, Northern Pacific S. S. Co. v. Industrial Acc. Commission
of California, 174 Cal. 346, 163 P. 199, 202. See Notes of Decisions under 28 U.S.C.A.
section 1333.

The 'right of a common-law remedy,' saved to suitors in actions maritime in their
nature arising under charter parties by U. S. Judicial Code 1911, section 24, par. 3 (see
Historical and Revision Notes under 28 U.S.C.A. section 1333) did not include at
tempted changes by the states in the substantive admiralty law, but did include all means,
other than proceedings in admiralty, which may be employed to enforce the right or to
redress the injury involved, AND INCLUDED REMEDIES IN PAIS, AS WELL AS
PROCEEDINGS IN COURT; JUDICIAL REMEDIES CONFERRED BY STATUTE,
AS WELL AS THOSE EXISTING IN THE COMMON LAW; REMEDIES IN
EQUITY, AS WELL AS THOSE ENFORCEABLE IN A COURT OF LAW. Red Cross
Line v. Atlantic Fruit Co., 44 S.Ct. 274, 277, 264 U.S. 109, 68 L.Ed. 582." (emphasis
added)

4.   That the courts have further stated as in *Northern Pacific S.S. Co. v. Industrial Acc.*

*Commission*, 163 P. 199 as follows:

"With this law and reasoning before us, we may make our more or less successful
endeavor to strike at the heart of the matter before us. Our Workmen's Compensation
Act is an economic and sociological development in legislation. It creates a right of
compensation to the workman without regard to the question whether his injury was
occasioned by tort. This law we have declared to be valid. Western Indemnity Co. v.
Pillsbury, 170 Cal. 688, 151 Pac. 398. Congress has been remiss in its failure to enter
and cover this field of legislation. Assuming for the moment that the remedy of our state
law comes within the scope and purview of a "remedy afforded by the common law,"
there is created and imposed a new obligation personal liability upon the part of the
owner of the vessel. Admiralty will respect this right when brought before it. But,
whether it does or not, IT IS ENTITLED TO EFFICACY AS WELL AS RESPECT BY
ALL STATE TRIBUNALS, and admiralty itself is under the compulsion to respect it if

the state statute, even though it creates a new right and new remedy therefore, is within the saving clause of the Judiciary Act, and to that question we now come.

Of course, at the time of the adoption of our Constitution and of the passage of the Judiciary Act the common law knew no right of action for a death, even when it was occasioned by tort, and, of course, it knew of no action for injury or death not occasioned by tort and had no remedy for either. Neither did admiralty.

Further more, except in the broadest sense, acts of Parliament form no part of the common law, and very frequently are in derogation of it. Nevertheless the language of the Judiciary Act is not limited to the remedies at common law then existing, and did and does include rights and remedies which might subsequently be created by statute. In Knapp, Stout & Co. v. McCaffrey, 177 U.S. 638k 20 Sup. Ct. 824, 44 L. Ed. 921, this matter is considered at some length. There a bill in equity had been brought in a state court to foreclose a common-law lien upon a raft. This bill in equity was held not to be an invasion of the exclusive admiralty jurisdiction of the District Courts, but to be a proceeding to enforce a common-law remedy within the saving clause, and it is said:

> `The real question is whether the proceeding taken is within the exception `of saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.' IT WAS CERTAINLY NOT A COMMON-LAW ACTION, BUT A SUIT IN EQUITY. BUT IT WILL BE NOTICED THAT THE RESERVATION IS NOT OF AN ACTION AT COMMON LAW, BUT OF A COMMON-LAW REMEDY; AND A REMEDY DOES NOT NECESSARILY IMPLY AN ACTION. A REMEDY IS DEFINED BY BOUVIER AS `THE MEANS EMPLOYED TO ENFORCE A RIGHT, OR REDRESS AND INJURY.' WHILE, AS STATED BY HIM, REMEDIES FOR NONFULFILLMENT OF CONTRACTS ARE GENERALLY BY ACTION, THEY ARE BY NO MEANS UNIVERSALLY SO. Thus a landlord has at common law a remedy by distress for his rent-a right also given to him for the purpose of exacting compensation for damages resulting from the trespass of cattle. A bailee of property has a remedy for work done upon such property, or for expenses incurred in keeping it, by detention of possession. An inn-keeper has a similar remedy upon the goods of his guests to the amount of his charges for their entertainment; and a carrier has a like lien upon the thing carried. There is also a common-law remedy for nuisances by abatement; a right upon the part of the person assaulted to resist the assailant, even to his death; a right of recaption of goods stolen or unlawfully taken; and a public right against disturbers of the peace by compelling them to give sureties for their good behavior. All these remedies are independent of an action.
>
> Some of the cases already cited recognize the distinction between a common-law action and a common-law remedy. Thus in the Moses Taylor, 4 Wall, 411, 431, 18 L. Ed. 397, it is said of the saving clause of

the Judiciary Act: `IT IS NOT A REMEDY IN THE COMMON-LAW COURTS WHICH IS SAVED, BUT A COMMON-LAW REMEDY.' To same effect is Moran v. Sturges, 154 U.S. 256, 276 [14 Sup. Ct. 1019, 38 L. Ed. 981]." (emphasis added)

Without further quotation, reference may be made to Col. Mid. Ry. Co. v. Jones (C.C.) 29 Fed. 193, which is quoted with approval by the United States Supreme Court in Searl v. School Dist. No. 2, 124 U.S. at page 200, 8 S. Ct. 460, 31 L.Ed. 415. THE SUBSTANCE OF THESE DECISIONS SEEMS TO BE THAT A COMMON-LAW REMEDY AS EMPLOYED IN THE JUDICIARY ACT MEANS ANY REMEDY, WITH OR WITHOUT ACTION OR JURY, WHICH IS A SUBSTITUTE FOR A SUIT AT LAW, whereby a liability is imposed after due process of law." (emphasis added)

5. That common law remedies are preserved to the undersigned by the Judiciary Act of

   1789, 1 Stat. 73-90, and the constitution of the state of Wisconsin Article XIV section 13

   and the Uniform Commercial Code including, but not limited to, Section 9.

6. That a comparison between the acts of the undersigned described as criminal in Case No.

   95-CF-2110 and Federal and State Rules of Discovery and the Uniform Commercial code

   demonstrate good faith and the lawfulness of the actions of the undersigned.

7. That Rule 36 of the Federal Rules of Civil Procedure states in pertinent part:

   "(a) Request for Admission. A party may serve upon any other party a written request for admission...Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request...the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney..."

   b) Effect of Admission. Any matter admitted under this rule is conclusively established..."

8. That even the requirements of federal and state rules have been met and exceeded in the

   actions of the undersigned with regard to his exercise of his right to the common law

   remedy.

9. That the statutory requirements for Class 3 legal notice publication have also been met by the actions of the undersigned with regard to his exercise of his right to the common law remedy.(cf. Wis. Stats. 985 et seq.)

10. That the requirements of *Northern Pacific Steam Ship et al.*, of DUE PROCESS have also been fulfilled as approved by the Supreme Court of the United States cases cited therein.

11. The exercise of a constitutional right and common law remedy which complies even with all statutory requirements of due process, though not bound by such unless the common law has been specifically abrogated by statutory law, cannot be construed or converted as or into a criminal act.

12. That the preceding process and exercise of a common law remedy culminates appropriately in conclusions, which are provided by statute to secure to interest in the admitted debt.

13. That the statutory requirements provided for the protection of all parties involved were strictly adhered to by the undersigned in filing such documents as are provided under the Uniform Commercial Code for the securing of such interests.

14. That in exercising a common law remedy preserved and available to him, David C. Kanz did not commit acts in violation of the statutes of Wisconsin sections 943.38 (2) and 943.60, as alleged in case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, therefore said judgment of conviction entered in Case No. 95-CF-2110 is void, and the undersigned makes offer or proof thereto.

15. That the conviction in State of Wisconsin v. David C. Kanz, 95-CF-2110, must be vacated as void, and the undersigned makes offer of proof thereto.

16. That concerning all the matters set forth herein the undersigned does hereto make offer of proof.

## REQUESTED RELIEF

WHEREFORE, for the previously stated reasons and on the stated basis, the undersigned respectfully moves this Court to Issue an order declaring:

1) That David C. Kanz did and does have a right to the assistance of counsel as provided for in the 6th Article of the Bill of Rights of the Constitution of the United States in Case No 95-CF-2110, State of Wisconsin v. David C. Kanz;

2) That in Case No 95-CF-2110, State of Wisconsin v. David C. Kanz, absent a knowing and intelligent waiver, David C. Kanz could not be imprisoned for any offense unless he was represented by counsel at his trial;

3) That since David C. Kanz, in Case No 95-CF-2110, State of Wisconsin v. David C. Kanz, was not represented by counsel and did not competently and intelligently waive his constitutional right to counsel, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty;

4) That in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, the trial court's jurisdiction at the beginning of trial was lost in the course of the proceedings due to failure to complete the court---as the Sixth Amendment requires---by providing counsel for David C. Kanz who was unable to obtain counsel, who did not intelligently waive this constitutional guaranty to counsel, and whose life and liberty were at stake;

5) That in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, when this requirement of the Sixth Amendment was not complied with, the Dane County Circuit Court no longer had jurisdiction to proceed;

6) That in Case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, the judgment of conviction pronounced and entered by the Dane County Circuit Court, which was without jurisdiction, is a nullity, has no binding effect and is void.

And/or in the alternative, to issue an order declaring:

1) That in exercising a common law remedy preserved and available to him, and the filing of the U.C.C. 1 and U.C.C. 3 and 4 forms, David C. Kanz did not commit acts in violation of the Statutes of Wisconsin sections 943.38 (2) and 943.60, as alleged in case No. 95-CF-2110, State of Wisconsin v. David C. Kanz, therefore said judgment of conviction entered in Case No. 95-CF-2110 is void.

And

1) Pursuant to Title 28 section 2202, issue an order to the State of Wisconsin and Dane County to immediately release the undersigned from custody;
2) and expunge all record of Case No. 95-CF-2110 from their files.

Dated: November 11, 2002

Respectfully submitted,

David C. Kanz, in want of counsel
5200 S. Tuckaway Blvd.
Unit 226-B
Greenfield, WI 53221

The above signed David C. Kanz, being personally known to me did appear before me

and did then and there affix his signature to the attached PETITION FOR DECLARATORY

JUDGMENT.

_____ Notary for the State of Wisconsin

My Commission expires ____7 -6____, 20 03 .

22

# EXHIBIT "A"

WISCONSIN          CIRCUIT BRANCH # 11         DANE   COUNTY

| State of Wisconsin, Plaintiff<br>-vs-<br><br>DAVID C. KANZ          , Defendant<br><br>2-11-60<br>Defendant's Date of Birth | TYPE OF CONVICTION (Select One)<br>____ Sentence to Wisconsin State Prisons<br>____ Sentence Withheld, Probation Ordered<br>XX Sentence Imposed & Stayed, Probation Ordered<br><br>COURT CASE NUMBER    95CF2110 |

The defendant entered plea(s) of: [ ] Guilty [X] Not Guilty [ ] No Contest

The [ ] Court [X] Jury found the defendant guilty of the following crime(s):

| CRIME(S) | WIS STATUTE(S) VIOLATED | FELONY OR MISDEMEANOR (F OR M) | CLASS (A-E) | DATE(S) CRIME COMMITTED |
|---|---|---|---|---|
| CT#1-FORGERY | 943.38(2) | F | C | 7-28-95 |

IT IS ADJUDGED that the defendant is convicted on   10-16-96   as found guilty and:

[XXXX] on   12-20-96   is sentenced to prison for 5 YEARS CONSECUTIVE TO CT#2 IMPOSED & STAYED.

[ ] on _____ is sentenced to intensive sanctions for _____

[ ] on _____ is sentenced to county jail/HOC for _____

[XX] on   12-20-96   is placed on probation for 10 YEARS, CONCURRENT TO PRISON IN CT#2.

## CONDITIONS OF SENTENCE/PROBATION

Obligations: (Total amounts only)

Fine                  $ _____
(includes jail assessments; drug assessments; penalty assessments)

Court costs         $ _____
(includes service fees; witness fees; restitution surcharge; domestic abuse fees; subpoena fees; automation fees)

Attorney fees       $ _____
Restitution FOR ANY REASONABLE COSTS INCL LEGAL FEES INCURRED BY VICTIM IN STRAITENING THIS
Other   MATTER OUT.      $ _____
Mandatory victim/witness surcharge(s)
     felony _____ counts $ _____
     misdemeanor _____ counts $ _____

Jail: To be incarcerated in the county jail/HOC for
_____
_____

Confinement Order For Intensive Sanctions sentence only - length of term: _____

Miscellaneous
NO CONTACT WITHCATHERINE DOYLE, HER FAMILY, HER BUSINESS ASSOCIATES, DIRECTLY OR INDIRECTLY INCLUDED BUT NOT LIMITED TO HAVING ANYONE ELSE CONTACT THE VICTIM OR HER FAMILY & ASSOCIATES. NOT TO BE INVOLVED PERSONALLY OR AS AN ADVISOR IN ANY WAY IN ANY FRIVOLOUS OR HARASSING LEGAL ACTIONS. COOPERATE COMPLETELY IN REMOVING ANY LIEN & RESTRICTIONS ON ANY ASSETS. (SEE OVER)

IT IS ADJUDGED that _____ days sentence credit are due pursuant to s. 973.155 Wis. Stats. and shall be credited if on probation and it is revoked.

IT IS ORDERED that the Sheriff shall deliver the defendant into the custody of the Department located in the City of

FILED 02 2263

NOV 1 5 2002

| NAME OF JUDGE   DANIEL MOESER | BY THE COURT: |
| DISTRICT ATTORNEY   C. WILLIAM FOUST | _____<br>Circuit Court Judge/Clerk/Deputy Clerk |
| DEFENSE ATTORNEY   LUIS CUEVAS | 12/20/96<br>Date Signed |

CONTINUED
OR PROPERTIES OR INCOME INVOLVING THE VICTIM & HER FAMILY, INCLUDED BUT NOT LIMITED TO
EXECUTING ANY NECESSARY DOCUMENTS TO ACCOMPLISH THIS. PARTICIPATE IN WHAT EVER COUNSELING
IS RECOMMENED BY AGENT.   DO 10 HOURS COMMUNITY SERVICE WORK EACH MONTH AT THE DIRECTION
OF AGENT DURING ANY PERIOD ON PROBATION.

FINE AND COSTS
  TOTAL FINE AND COSTS ON THIS CASE    $7820.00

  EACH CASE $1000FINE
      //    //     $220 PENALTY ASSESSMENT
      //    //     $10 JAIL ASSESSMENT
      //    //     $70  VICTIM/WITNESS PART A & B
  #1 ONLY        $ 20 COSTS

| STATE OF WISCONSIN | CIRCUIT COURT BRANCH 11 | DANE COUNTY |

STATE vs. DAVID C. KANZ

**JUDGMENT OF CONVICTION** *dd*
Sentence to Wisconsin State Prisons
Case No.: 95CF2110

DATE OF BIRTH: 2-11-60

The defendant entered a plea of NOT GUILTY

The **THE JURY** found the defendant guilty of the following crime(s):

| Crime(s) | Wis. Stat. Violated | Fel. or Misd. | Date(s) Crime Committed |
|---|---|---|---|
| CT #2- CRIMINAL SLANDER OF TITLE | 943.60(1) | F-E | 7-28-95 |

IT IS ADJUDGED that the defendant is convicted on **10-16-96** as found guilty and on **12-20-96** is sentenced as follows:

Defendant is sentenced to prison for:  two years, forthwith.

Defendant is sentenced to intensive sanctions for:

CONFINEMENT ORDER For Intensive Sanctions Sentence only - length of term:

condition of probation in  other counts

IT IS ADJUDGED that **65** days sentence credit are due pursuant to § 973.155 Wisconsin Statutes.

IT IS ORDERED that the Sheriff execute this sentence.

BY THE COURT:

DANIEL MOESER, Judge
C WILLIAM FOUST, District Attorney
LUIS CUEVAS, Defense Attorney

Deputy Clerk
DATED:  December 20, 1996

# EXHIBIT "B"

1           THE DEFENDANT:  Yes.

2           THE COURT:  I didn't receive it, but it was filed

3     October 7th of 1996 in Dane County court.  It looks like

4     it was filed October 6th in the Court of Appeals also,

5     and I have read that, so I have that.  Is there anything

6     else you want me to do on that?

7           THE DEFENDANT:  No.

8           THE COURT:  I saw that for the first time today.

9           THE DEFENDANT:  Since we're getting on to the

10    motion that will take a little bit of time, since I do

11    have a couple of other things I need to file with the

12    court today, why don't I file them, give you a chance to

13    look at them, and give me a chance to take a break and

14    look at the other motions.

15          THE COURT:  There's one other thing I want to

16    take up before we take our break, and that's the issue of

17    counsel.  Mr. Kanz, it's hard to tell, because you sign a

18    lot of things "in want of counsel" or words to that

19    effect, what your position is with respect to having an

20    attorney.

21          THE DEFENDANT:  I have sought counsel.

22          THE COURT:  Where have you gone, sir?  02 2263

23          THE DEFENDANT:  Georgia, talked to people in Ohio

24    and Wisconsin.  "In want of counsel" states that I am not

25    appearing as pro se, which I object.  This case has been

**FILED**

51

NOV 1 5 2002

1        stylized as me appearing pro se which would indicate in

2        my mind that I'm competent to prosecute or defend.  That

3        is not what I'm saying.

4                THE COURT:  Do you believe you are not competent?

5                THE DEFENDANT:  I believe I'm in want of counsel.

6                THE COURT:  Do you believe you're not competent?

7                THE DEFENDANT:  Seeking benefit of counsel.

8                THE COURT:  Can you answer my question?

9                THE DEFENDANT:  I've already answered.

10                THE COURT:  If you think that's your answer, that

11        can stand.  What attorneys in Wisconsin have you

12        contacted?

13                THE DEFENDANT:  That's irrelevant.  It doesn't

14        matter.

15                THE COURT:  Do you believe you are indigent?

16                THE DEFENDANT:  No, I do not.

17                THE COURT:  And do you wish -- is it your

18        position you are waiving your right to counsel?

19                THE DEFENDANT:  No, it's not.

20                THE COURT:  What is your position?

21                THE DEFENDANT:  It means I'm still continually

22        seeking counsel.

23                THE COURT:  Do you have appointments set up?

24                THE DEFENDANT:  I haven't any set up as of today,

25        no.

1          THE COURT:  As I understand it, I want the record

2     to be clear, you don't claim you're indigent, and you

3     refuse to tell me the names and dates and times, places

4     where you contacted Wisconsin counsel?

5          THE DEFENDANT:  What would that matter?

6          THE COURT:  It would appear -- it would help us

7     determine whether or not you have made a reasonable

8     effort to obtain counsel.  And you've checked apparently

9     with counsel in a couple other states?

10          THE DEFENDANT:  Uh-huh.

11          THE COURT:  And is it your intention to proceed

12     without counsel next week for the trial?

13          THE DEFENDANT:  No.

14          THE COURT:  What is your intention?

15          THE DEFENDANT:  My intention is to continue to

16     seek benefit of counsel.

17          THE COURT:  But you refuse to put on the record

18     what you have done or what you are going to accomplish

19     then?

20          THE DEFENDANT:  As I stated --

21          THE COURT:  Beyond what you've already said.

22          THE DEFENDANT:  I am innocent, sir, of any

23     wrongdoing.  So to characterize me as someone who isn't

24     doing what I say I object to.

25          THE COURT:  Is it your position the case should

53

1       or should not go ahead next week?

2                 THE DEFENDANT:  I don't think it should go on.

3                 THE COURT:  For what reasons?

4                 THE DEFENDANT:  You're asking the questions.

5                 THE COURT:  Well, if you have a basis for

6       thinking it shouldn't go ahead, I would like to have it

7       on the record.

8                 THE DEFENDANT:  Without benefit of counsel.

9                 THE COURT:  So do you think a defendant in a

10      criminal case who never obtains counsel has a right to

11      have that case adjourned indefinitely?

12                THE DEFENDANT:  I didn't say that.

13                THE COURT:  What are you saying?

14                THE DEFENDANT:  I said what I said.

15                THE COURT:  Okay.  The record will speak for

16      itself.  Just so there is no misunderstanding, I believe

17      the record will show that you have been advised of your

18      right to counsel on numerous occasions, and that your

19      total conduct in this case does constitute a waiver of

20      counsel.

21                THE DEFENDANT:  On what basis?

22                THE COURT:  I believe the record will demonstrate

23      that you've had every opportunity to get counsel.  Okay.

24      You want to file something more?

25                THE DEFENDANT:  Yes, I do.

54

# EXHIBIT "C"

1     appear to be correct.

2                     Furthermore, essentially the grounds

3     for the appeal tend to be what we have already dealt

4     with over and over again during the prior proceedings

5     in this case.  There is little likelihood of success

6     on appeal.  Furthermore, if the legal work and

7     arguments Mr. Kanz presented prior to trial and during

8     trial are a reflection of the adequacy of the content

9     of whatever library he was using when he was not in

10    custody, there is little reason to believe that he

11    will -- that the facilities he has now are not

12    adequate and reasonable.

13                     Mr. Kanz is not only a risk to flee, he

14    is a risk not to follow conditions of bail.  There

15    continues to be a lack of respect for any authority

16    other than that which he feels he wants to accept, and

17    that is not the kind of people we release on bail

18    pending appeal.  I don't know and there's nothing in

19    the record about whether he's complying with the

20    conditions of probation or not at this point, so I

21    won't get into that because I don't know the answer

22    to that.  Anything else for the record, Mr. Kanz?

23                     MR. KANZ:  Yes.  What--  You say t̶h̶a̶t̶ a

24    flight risk.  Can you articulate as to why?

25                     THE COURT:  I can try as best I can.  I

02 2263

FILED

NOV 1 5 2002

# EXHIBIT "D"

1      for his actions.

2          He went to trial believing that he was

3      correct as to what these forgeries, assignments

4      to title, which is what this case is about,

5      represent.  He believed that he was not

6      guilty of those offenses.

7          Many people go to trial based upon their

8      beliefs or convictions, with or without the

9      lawyer.  Sometimes I guess you have advice

10     of that lawyer.  Mr. Kanz did not have the

11     benefit to have an attorney represent him.

12     Any information that he gathered, according

13     to what Mr. Kanz told me, was based upon his

14     own reading of the law, his understanding of

15     the law.

16         David sent you a letter, Judge, on

17     November 23rd, a long letter expressing his

18     feelings regarding what happened in this case.

19     He has expressed remorse in that letter and

20     has continued to express remorse through

21     different people that he have contact or

22     came in contact with.

23         I have met with David over 20 times

24     through my appointment.  Personally, I don't

25     believe that he's a bad person.

                        45

02 2263

FILED

NOV 1 5 2002

U.S. DISTRICT COURT